Helen Wood Zeliff v. Commissioner.
Zeliff v. Commissioner
Docket No. 62038.
United States Tax Court
T.C. Memo 1958-114; 1958 Tax Ct. Memo LEXIS 115; 17 T.C.M. (CCH) 622; T.C.M. (RIA) 58114; June 17, 1958
*115 Helen Wood Zeliff, Chastleton Hotel, Washington, D.C., pro se. Paul E. Waring, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioner's income tax for the year 1952 in the amount of $348.66. This amount is explained in the statement accompanying the notice of deficiency as being the sum of "[income] tax liability as corrected" ( $344) and "[self]-employment tax as corrected" ($43.85) less the "[total] tax liability as shown by [petitioner's] return" in the sum of $39.19. This statement (except that part which sets out the mathematical "Computation of Self-Employment Tax" and "Computation of Income Tax") reads as follows: "Inasmuch as the itemized deductions claimed on page 3 of your return remaining after the disallowances made hereinafter amount to less than 10 per cent of your corrected adjusted gross income, such deductions are disallowed and your tax is determined from the tax table which allows approximately 10 per cent of your income to cover your non-business deductions. "The deduction of $50.00 for loss on a wrist watch is disallowed for the reason that you have failed to show *116 that the loss resulted from theft. "The deduction of $2.90 for medical expenses is disallowed for the reason that such amount does not exceed 5 per cent of your corrected adjusted gross income. "The deduction of $94.46 for insurance is disallowed for the reason that such premiums represent personal expenses rather than business expenses. "ADJUSTMENTS TO ADJUSTED GROSS INCOME "Adjusted gross income as dis-
closed by return
$2,254.87
"Unallowable deductions and ad-
ditional income: (a) Rental expense
651.96
Total
$2,906.83
"Nontaxable income and addi-
tional deductions: (b) Unemployment
compensation
$160.00
(c) Transcribing er-
ror
360.11
520.11
Adjusted gross income as cor-
rected
$2,386.72
EXPLANATION OF ADJUSTMENTS "(a) The deduction of $724.40 for rent on business property is disallowed to the extent of $651.96 for the reason that it is held that only 10 per cent of the rentals paid on apartments occupied by you during the taxable year is allowable to your business. "(b) The unemployment compensation of $160.00 received by you is nontaxable income and is, therefore, excluded from your gross income. "(c) In computing the *117 adjusted gross income of $2,254.87 shown on your return you included self employment income of $1,657.00 instead of $1,296.89 as shown on Schedule C of your return." The allegations of error in the petition filed herein are as follows: 4. Commissioner is in error in stating that the itemized deductions claimed on page 3 of the return remaining after the disallowances made hereinafter amount to less than ten percent of Petitioner's corrected adjusted gross income, such deduction being disallowed and Petitioner's tax is determined from the tax table which allows approximately ten percent of Petitioner's income to cover her non-business deductions. A. Commissioner is in error in stating that only ten percent of the rentals paid on apartments is deductible. B. Commissioner is in error in denying the allowance of Fifty Dollars for loss of wrist watch for the reason that Commissioner feels Petitioner failed to show that the loss resulted from theft. C. Commissioner is in error in denying allowance of $2.90 for medical expenses for the reason that such amount does not exceed five percent of Petitioner's corrected adjusted gross income. D. Commissioner is in error in denying the *118 allowance of $94.46 for insurance for the reason that such premiums represent personal expenses rather than business expenses. E. Commissioner is in error in stating that $350.00 for depreciation of five acre farm and automobile at Apple Grove, Virginia is not deductible since the farm is not rented and the automobile is used merely for traveling to and from work. Petitioner was not represented by counsel and presented her own case at the trial herein. Findings of Fact Petitioner is an individual who resided during most of the taxable year in Washington, D.C., although on her income tax return for this year she stated her home address to be "Apple Grove, Va." In this return, filed with the district director of internal revenue at Baltimore, Maryland, she reported the receipt of "total wages" as follows: Executive Services
$ 93.76
St. Louis - Frisco RR
291.26
Public Steno Fees
1,650.00
Notary Fees
7.00
Unemp. Comp. while Unemployed
160.00 She also reported the receipt of "other income" in the amount of $52.85, of which $50 was interest on savings bonds. In this return petitioner itemized deductions on account of contributions in the sum of $10 (described *119 as "Doles - Church collections"), on account of interest in the sum of $84.31 (described as "Int. on Mtge. Apple Grove"), on account of taxes in the sum of $13.50 (described as "Dwelling Apple Grove"), on account of losses from, theft in the sum of $50 (described as "Wrist Watch from Alturas Hotel Cost Approx. [$]100"), on account of medical expenses in the sum of $2.90 (described as "Prescription"), and on account of miscellaneous as follows: Auto Tags & Insp. - 11.00
Insurance 29.50
$40.00
Insur. on Dwelling - Apple Grove
12.60
Life Ins. Prems. Less 7.00 Div.
52.36 with the notation thereunder "See Attached." There was attached to the return two sheets of note paper. Upon the first of these was printed in ink the following: "Additional Deductions
"Rent Alturas Hotel & Later Chastle-
ton Hotel - Quarters Maintained for
Work as Public Steno
6 1/2 mos. at Alturas Hotel
[ $]400.40
5 1/2 mos. at Chastleton Hotel
324.00
Total
724.40
"Supplies - Carbon
"Supplies - Note books
"Supplies - Pencils
"Supplies - Erasers
12.00
"Ads in newspaper
8.73
"Gasoline Sales Tax - Approx. 5200
Miles
39.00
"Retail Sales Tax and Ent. Tax
50.00
834.13"
*120 Upon the second sheet was written in ink the following: "I have taken a 300. depreciation on my farm at Apple Grove as it has been a complete loss to me. I have not been able to keep it planted or in repair. Each time I have hired any one to do anything for me they have done more harm to the property than help. I had a man fix my roof and he deliberately left undone the very parts that needed repair. I hired a plumber to do some work and he deliberately cracked my pipe - I say deliberately because he kept hammering away with his chisel with the words 'This may be terra cotta.' "While there has been a complete shortage of homes all over the country, mine has laid idle for four years - If I can declare this as a loss against my income tax, please let me have a refund. Necessarily, I have not put money into repairs and the dwelling has depreciated perhaps more than the figure I have stated. I can supply vouchers on all deductions taken." Schedule F of the return is blank. In Schedule H, "Explanation of Deduction for Depreciation Claimed in Schedule F," petitioner listed in the column headed "Kind of property (if buildings, state material of which constructed). Exclude land and other *121 nondepreciable property" the following: 5 Acre Farm, Apple Grove, Va. 1939 Plymouth Coupe In this schedule the "farm" is shown as having been acquired in 1948 at a cost of $3,750 and the automobile to have been acquired in 1949 at a cost of $595. The "Depreciation allowable this year" is shown to be $300 for the farm and $50 for the automobile. No other information is given in Schedule H. In her return for 1951 petitioner took as a "Miscellaneous" deduction, and without reference to Schedule H, which was left blank, the sum of $500 described as "Depreciation on Property." In the same return she deducted as a casualty loss $100 described as "3 Apple Trees [(Income Producing)] Struck by Lightming [Lightening]." The "Total Deductions" claimed by petitioner on the 1952 return were in the amount of $1,449.80. [1]
During the greater part of 1952 petitioner was engaged in business as a public stenographer and notary public in Washington, D.C. From sometime in February to sometime in July of that year she subleased a room in an apartment in the Alturas Apartment Hotel and later subleased a room in an *122 apartment in the Chastleton Apartment Hotel. During at least a part of this time she also had a room in the Sherman Apartments. From time to time she also rented a room at the Y.W.C.A. for the night. She ate her meals in restaurants. During the time she subleased the rooms at the Alturas and Chastleton Hotels she spent about half the nights when in Washington in those rooms. She did not have much public stenographic work in 1952, but she made her business headquarters and transcribed her notes in those rooms. Approximately half her expenses for those rooms constituted petitioner's business expenses. In 1948 petitioner bought a 5-acre farm in Louisa County, Virginia, known as Apple Grove Farm, about 90 miles from Washington. It had on it some apple trees. Also located on the land was a 4-room house, about 50 years old and in a bad state of repair, and a garage. The price of this farm was $3,750. Petitioner paid $1,000 in cash and executed a mortgage securing the balance of $2,750. During 2 years prior to 1952 petitioner tried to grow crops on the land through a sharecropping arrangement but these attempts were unprofitable. At some time prior to 1952 petitioner decided to sell or *123 lease this farm and began to make attempts, which were continued through the taxable year, to effect its sale or lease. During the taxable year she visited the farm "not many" times to look after the property. In 1952 pipes in the house froze resulting in some water damage. Petitioner testified that she estimated at $300 the "damage done to the house, kitchen ceiling mildewed and spotted and the fact that it is obsolete, too." This is the basis for the "depreciation" on the farm set out in her return. In 1952 petitioner paid interest on the mortgage indebtedness covering this farm in the amount of $93.10. During 1952 this farm was held by petitioner for sale or lease and was not used by her as a residence. This payment is a deductible business expense. In 1952 a lapel watch belonging to petitioner was stolen. This watch had been given to her. She did not know what its cost to the donor was. In 1952 petitioner owned a Plymouth automobile. She used it "not many" times to go from Arlington, Virginia, where it was kept, to the Louisa County farm (90 miles away). She testified that it was used during the taxable year only on these occasions and for that purpose, yet in her return *124 for that year she deducted $39 as "Gasoline Sales Tax - Approx. 5200 Miles." Respondent concedes that petitioner's adjusted gross income for the taxable year, without considering adjustments which may be required by our findings and opinion herein, is $2,094.87. Opinion KERN, Judge: This case presents for our decision a number of questions of fact. After a careful consideration of the entire record herein we have concluded (1) that petitioner is entitled to a deduction from gross income of half of her expenditures in connection with her sublease of rooms in the Alturas and Chastleton Hotels, (2) that she is entitled to no deductions on account of depreciation, (3) that she is entitled to no deduction on account of the theft of a watch, (4) that she is entitled to a deduction in computing her adjusted gross income for the taxable year of $93.10 as interest paid in connection with "business property," and (5) that she is entitled to no deduction on account of insurance premiums paid. [2] It is obvious that petitioner will not be entitled to a deduction of $2.90 as medical expenses. *125 These conclusions of fact are required by the record before us and the findings which we have made based upon that record. No good purpose would be served by an extended recapitulation of the evidence herein, but, for the benefit of petitioner who is a layman, we point out that in making our findings of fact we must be guided by the evidence legally before us and not by unsworn statements contained in briefs or memoranda. Decision will be entered under Rule 50. Footnotes
1. We have been unable to figure out how this total amount was computed.↩
2. As to this latter item there is no evidence that any insurance premiums were paid by petitioner.↩